[No. 6613–4–III.   Division Three.   December 12, 1985.]

PUBLIC HOSPITAL DISTRICT NO. 1, GARFIELD COUNTY,
ET AL, *Respondents*, v. THE DEPARTMENT
OF SOCIAL AND HEALTH SERVICES,
*Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Maureen E. McGuire, Assistant,* for appellant.

*Gregory C. Simon, Paul L. Ahern, Jr.,* and *Roberts and Shefelman,* for respondents.

THOMPSON, J.—The Department of Social and Health

Services (DSHS) appeals the determination that interest expense on general obligation bonds issued by public hospital districts for capital improvements is reimbursable by the State and does not require offset by local tax revenues generated by the districts to pay annual principal and interest obligations on the bonds. We affirm.

Pend Oreille County and Garfield County Public Hospital Districts (the Districts) are municipal corporations authorized under RCW 70.44 to own and operate nursing homes. The Districts, pursuant to contractual agreements with DSHS, provide nursing home Medicaid services and "allowable costs" are reimbursable by DSHS according to the provisions of then–RCW 74.09 and WAC 388–96. But reimbursement for such allowable costs must be reduced whenever the service generates revenue or financial benefits other than normal billing for care services. WAC 388–96–505(1).

In 1979 and 1980, the Districts filed cost reports with DSHS and claimed as allowable, reimbursable costs the interest expense incurred from annual principal and interest payments for general obligation bonds issued to finance construction and capital improvements to the nursing home facilities. DSHS declined to reimburse the Districts for the interest expenses, claiming the Districts' annual property tax levies constituted generation of revenue from services and required an offset for taxes collected to pay for those interest expenses.

The Districts requested administrative review of that determination. An administrative law judge ruled the interest expenses reimbursable and not subject to a property tax offset. Following a review examiner's reversal, the Superior Court reinstated the administrative law judge's decision. DSHS appeals.

The issue is whether local hospital district property taxation constitutes generation of revenue within the meaning of WAC 388–96–505. Like that of the superior court, our review of the administrative decision is determined by RCW 34.04.130(6) which provides:

(6) The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.

■ Since the parties stipulate to the facts as established by the agency, what remains is a legal issue concerning the application of statutory and regulatory provisions. *Safeco Ins. Cos. v. Meyering,* 102 Wn.2d 385, 687 P.2d 195 (1984). Thus, the error of law standard of RCW 34.04.130(6)(d) applies and allows the reviewing court to independently substitute its judgment for that of the agency, though substantial weight is accorded the agency's interpretation of the law. *Renton Educ. Ass'n v. Public Empl. Relations Comm'n,* 101 Wn.2d 435, 680 P.2d 40 (1984); *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 324–26, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983).

To be eligible for Medicaid funding, DSHS implemented a program in compliance with federal and state law to reimburse providers of nursing care facilities serving Medicaid patients. *See, e.g., State ex rel. Living Servs., Inc. v. Thompson,* 95 Wn.2d 753, 755, 630 P.2d 925 (1981); *United Nursing Homes, Inc. v. McNutt,* 35 Wn. App. 632, 634, 669 P.2d 476 (1983). At the time of the relevant audit periods, RCW 74.09.590 (repealed by Laws of 1980, ch. 177, § 90) provided:

[Nursing home] [p]ayment rates shall:

(1) Not be set lower prospectively than the level which may reasonably be expected to reimburse in full for actual allowable costs under federal regulations for a

nursing home which is economically and efficiently operated;

. . .

(4) Permit as allowable those expenses necessary to meet all items of expense which operators of nursing homes must incur to provide federally defined skilled or intermediate care services;

Laws of 1977, ch. 260, § 5.

Pursuant to authority granted in RCW 74.09.120 (amended by Laws of 1980, ch. 177, § 84) DSHS developed nursing home accounting and reimbursement regulations which were codified in WAC 388–96. Allowable costs are defined in WAC 388–96–501 as:

documented costs which are necessary, ordinary and related to the care of medical care recipients, and are not expressly declared nonallowable by applicable statutes or regulations. Costs are ordinary if they are of the nature and magnitude which prudent and cost–conscious management would pay.

Specifically, WAC 388–96–539 (repealed December 4, 1984) included bond interest expense as an allowable cost as follows:

Allowable interest. (1) The contractor's necessary and ordinary interest for working capital and capital indebtedness will be allowable.

(a) To be necessary, interest must be incurred in connection with a loan which satisfies a financial need of the contractor and be for a purpose related to patient care. . . .

(b) To be ordinary, interest must be at a rate which is not in excess of what a prudent borrower would have to pay at the time of the loan in an arm's–length transaction in the money market.

(c) *Interest expense shall include* amortization of bond discounts and *expenses related to the bond issue.* Amortization shall be over the period from the date of sale to the date of maturity or, if earlier, the date of extinguishment of the bonds.

(Italics ours.)

Similar principles concerning allowable costs, allowable

interest expense, and the offset of miscellaneous revenues were incorporated into the Nursing Homes Auditing and Cost Reimbursement Act of 1980 at RCW 74.46.190, .295 (expired January 1, 1985), and .200. Moreover, RCW 74.46-.290 expressly allows construction expense as follows:

Expense for construction interest. (1) Interest expense and loan origination fees relating to construction of a facility incurred during the period of construction shall be capitalized and amortized over the life of the facility pursuant to RCW 74.46.360. The period of construction shall extend from the date of the construction loan to the date the facility is put into service for patient care.

However, all allowable costs are subject to reduction whenever the service or activity incurring the cost generates revenue or financial benefit. To that effect, WAC 388–96–505 provides:

Offset of miscellaneous revenues. (1) Allowable costs shall be reduced by the contractor whenever the item, service, or activity covered by such costs generates revenue or financial benefits (e.g., purchase discounts or rebates) other than through the contractor's normal billing for care services; . . .

RCW 70.44.060(6) empowers a hospital district to levy an annual tax on all taxable property within the district. Similarly, RCW 70.44.110 authorizes the district to issue general obligation bonds to incur general indebtedness to construct or improve health care facilities. *See also State ex rel. State Fin. Comm. v. Yelle,* 33 Wn.2d 940, 941, 207 P.2d 730 (1949). Finally, RCW 70.44.130 provides:

Bonds—Payment—Security for deposits. The principal and interest of such general bonds shall be paid by levying each year a tax upon the taxable property within the district sufficient, *together with other revenues of the district available for such purpose,* to pay said interest and principal of said bonds, which tax shall be due and collectible as any other tax.

(Italics ours.)

The parties agree with the trial court's conclusion the nursing home bond interest expenses were allowable, reim-

bursable expenses under RCW 74.46,[1] and WAC 388–96–501, –539. The question then becomes whether the offset provision applies to the taxes levied in this instance.

■ Although the Districts here chose to levy annual property taxes to meet the bond principal and interest payments, RCW 70.44.130 does not mandate new taxation as the exclusive method of financing. In the absence of legislation to the contrary, we agree with the Districts that reimbursement under these facts does not result in double payment, but rather enables the Districts to either lower the yearly tax rate or retire the bonds early at a savings to the Districts. In effect, what results is the proper spread of the cost of state and federally mandated health care programs among the larger class of state and federal taxpayers. For these reasons, the administrative law judge and trial court did not err in determining the levy of taxes was not "generation of revenue" requiring offset.

Affirmed.

GREEN, C.J., and MUNSON, J., concur.

---

[1]Although the trial court referred to chapter 74.46, which was not enacted until 1980, we note the new statute reaffirms and clarifies those statutory and regulatory provisions applicable to this case during the relevant audit periods. The present language of RCW 74.46.190(2) concerning allowable costs is virtually identical to then–applicable WAC 388–96–501.