[No. 43688-4-II.   Division Two.   May 20, 2014.]

SOUTH KITSAP SCHOOL DISTRICT, *Respondent*, v. DANIEL B. ZIMMERMAN ET AL., *Respondents*, THE BOARD OF INDUSTRIAL INSURANCE APPEALS, *Appellant*.

358

*Robert W. Ferguson, Attorney General*, and *Kathryn C. Wyatt, Assistant*, for appellant.

*Bernadette M. Pratt* (of *Pratt Day & Stratton PLLC*); and *David C. Snell* and *Kathryn C. Comfort* (of *Small Snell Weiss & Comfort PS*), for respondents.

*Kristopher I. Tefft* on behalf of Association of Washington Business, amicus curiae.

¶1 BJORGEN, J. — Under legislation adopted in 2011, injured workers may waive certain lifetime workers' compensation benefits in exchange for a series of installment payments. This is accomplished by negotiating a claim resolution structured settlement agreement (CRSSA) with the Department of Labor and Industries or self-insured employers and obtaining approval by the Board of Industrial Insurance Appeals (Board).

¶2 In this appeal the Board challenges a superior court order that reversed the Board's decision to reject a CRSSA between the workers' compensation trust for South Kitsap School District (District), a self-insured employer, and Dan-

iel Zimmerman, a worker injured in the course of his employment with the District. The Board rejected the CRSSA because it could not determine from the information provided whether it was in Zimmerman's best interest. The District appealed the Board's decision to superior court, arguing that because an attorney represented Zimmerman in the negotiations, the Board should not have considered whether the CRSSA was in Zimmerman's best interest. We hold that the statute, as written, does not permit the Board or its hearing examiner to reject a proposed CRSSA for a worker represented by an attorney because they deem it not to be in the worker's best interest. Therefore, we affirm the superior court.

## FACTS

¶3 In February 2012 Zimmerman and the District entered into a CRSSA in which Zimmerman forfeited the right to receive future disability benefits in exchange for a series of seven monthly payments totaling $60,000. The CRSSA concerned a claim Zimmerman had filed in 1991 after suffering a low back injury. By April 2011 Zimmerman had received approximately 19 years of time loss compensation benefits for that injury.

¶4 The three-member Board rejected the CRSSA by a vote of two to one[1] because it could not determine whether the CRSSA met the requirements under RCW 51.04-.063(3)(b). Specifically, the majority stated that

> [a]s part of that determination, we believe we must evaluate whether the [CRSSA] is in the best interest of the worker. We are unable to make that determination based on the information that has been provided to us.

Clerk's Papers (CP) at 20.

---

[1] The dissenting Board member expressed the view, also taken by the superior court, that the statute did not allow the Board to consider the best interest of the injured worker in evaluating a CRSSA submitted by a worker represented by an attorney.

¶5 The decision made clear that the parties could resubmit the same CRSSA if they provided certain additional information. The majority described the apparent inadequacy of the CRSSA and explained what additional information it needed in the following terms:

> According to the [CRSSA], the self-insured employer paid Mr. Zimmerman almost 19 years of time loss compensation benefits through April 2011. The parties have provided no explanation for why those benefits were terminated at that point. From the information provided, we cannot ascertain whether there is a genuine dispute, based on specific opposing medical or vocational opinions, regarding Mr. Zimmerman's entitlement to continuing total disability benefits. If there is such a dispute, that might explain why he is willing to relinquish a claim for such benefits in exchange for $60,000. We should be provided the estimate of the value of the claim or the pension reserve. Mr. Zimmerman must be aware of the potential benefits he forfeits by entering into this [CRSSA]. Alternatively, if he now has some other source of income to support him or anticipates a reduction in his compensation rate as a result of receiving other benefits, perhaps that would explain why this settlement is in his best interest. But without further information, we cannot say it would be in his best interest to for[ ]go total disability benefits in light of his life expectancy, particularly with such a rapid pay out and no explanation of how Mr. Zimmerman will support himself thereafter.

CP at 22. Zimmerman was born July 31, 1956, had an estimated life expectancy of 24.01 years at the time of the CRSSA, and was single with one child. Thus, the majority was concerned that $60,000 would not cover Zimmerman's living expenses for the remainder of his life and, consequently, would not be in his best interests.

¶6 The District appealed the Board's decision to the Kitsap County Superior Court. On its motion for summary judgment, the District argued that the statute unambiguously precludes the Board's consideration of a represented worker's best interest and that the Board may not substitute its own opinion for that of the worker's attorney.

¶7 After hearing argument from Zimmerman, the Board, the Department of Labor and Industries, and the Washington Labor Council, the superior court granted the District's motion. The court entered an order reversing the Board's decision and remanding the matter "to the Board to review the agreement under RCW 51.04.063(3) with the caveat that subsection (3)(b) does not include a finding of best interest of the worker but only those requirements that apply to all CRSSAs." CP at 104. The Board timely appeals.

## ANALYSIS

¶8 The conclusive issue in this appeal is whether the Board may consider the best interest of the worker in evaluating a CRSSA submitted by a worker represented by an attorney. Concluding that the statute unambiguously removes that consideration from the Board's reach when the worker is represented by an attorney, we affirm the superior court.

### I. STANDARD OF REVIEW

¶9 We review the Board's interpretation of a statute de novo under the " 'error of law' " standard, which allows us to substitute our own interpretation for that of the Board. *Roller v. Dep't of Labor & Indus.*, 128 Wn. App. 922, 926-27, 117 P.3d 385 (2005) (quoting *Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.*, 122 Wn. App. 402, 409, 97 P.3d 17 (2004)). In this context, however, we "give substantial weight to the agency's interpretation of statutes and regulations within its area of expertise" and "will uphold an agency's interpretation . . . if 'it reflects a plausible construction of the language of the statute and is not contrary to the legislative intent.' " *Cobra Roofing*, 122 Wn. App. at 409 (quoting *Seatoma Convalescent Ctr. v. Dep't of Soc. & Health Servs.*, 82 Wn. App. 495, 518, 919 P.2d 602 (1996)); *St. Francis Extended Health Care v. Dep't of Soc. & Health Servs.*, 115 Wn.2d 690, 695, 801 P.2d 212 (1990).

¶10 In interpreting a statute, an appellate court's "fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We derive the plain meaning "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Campbell & Gwinn*, 146 Wn.2d at 11. That is,

> [t]he meaning of words in a statute is not determined from those words alone but from all the terms and provisions of the act as they relate to "the subject of the legislation, the nature of the act, the general object to be accomplished and consequences that would result from construing the particular statute in one way or another."

*In re Custody of E.A.T.W.*, 168 Wn.2d 335, 343-44, 227 P.3d 1284 (2010) (internal quotation marks omitted) (quoting *Burns v. City of Seattle*, 161 Wn.2d 129, 146, 164 P.3d 475 (2007)). If "the statute remains susceptible to more than one reasonable meaning" after consideration of all relevant statutory language, it "is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Campbell & Gwinn*, 146 Wn.2d at 12.

## II. The Best Interest of the Worker in the CRSSA Statute and Regulations

¶11 In 2011 the legislature made extensive modifications to industrial insurance law, codified in Title 51 RCW. Laws of 2011, ch. 37, § 1. Among these, a new statute, RCW 51.04.063, authorized certain injured workers receiving benefits to negotiate structured settlements, or CRSSAs, in which they would forfeit remaining benefits in return for a specific sum payable in installments. Before this legislation, any agreement purporting to waive workers' compensation benefits was void as a matter of law. RCW 51.04.060.

¶12 The purpose of the new statute is captured in the legislative findings set out in RCW 51.04.062:

Washington state's workers' compensation system should be designed to focus on achieving the best outcomes for injured workers. Further, the legislature recognizes that controlling pension costs is key to a financially sound workers' compensation system for employers and workers. To these ends, the legislature recognizes that certain workers would benefit from an option that allows them to initiate claim resolution structured settlements in order to pursue work or retirement goals independent of the system, provided that sufficient protections for injured workers are included.

The statement of purpose in the session laws speaks of a similar rationale. *See* LAWS OF 2011, ch. 37, § 1. These findings make plain that "achieving the best outcomes for injured workers" remains the "focus" of the system and that controlling pension costs is valued to the extent it serves that end.

¶13 The new statute includes a number of safeguards aimed at preventing injured workers from unwisely waiving their benefit entitlements: only workers over a specified age (currently 55, but declining to 50 by 2016) may enter into CRSSAs; parties may initiate a CRSSA no sooner than 180 days after issuance of a final order allowing the claim at issue; workers may not waive medical benefits under a CRSSA; and workers must submit all CRSSAs for Board approval. RCW 51.04.063(1), (2)(a). Further, any party may revoke its consent to the CRSSA by notifying the Board and the other parties in writing within 30 days following the Board's approval of the CRSSA. RCW 51.04.063(6).

¶14 The statute also provides an additional layer of protection for workers not represented by a lawyer. RCW 51.04.063(2)(h)-(*l*). In those circumstances the parties must submit the proposed CRSSA to the Board along with a request for a conference with an industrial appeals judge (IAJ), who must approve the CRSSA before the Board considers it further. RCW 51.04.063(2)(h). The IAJ must

ensure that the worker understands the terms of the CRSSA, the benefits generally available under the workers' compensation system, and the consequences of entering into a CRSSA. RCW 51.04.063(2)(h), (i). The IAJ may approve the CRSSA only "if the judge finds that the agreement is in the best interest of the worker." RCW 51.04.063(2)(j). In making this determination, the IAJ must consider:

   (i)    The nature and extent of the injuries and disabilities of the worker;

   (ii)   The age and life expectancy of the injured worker;

   (iii)  Other benefits the injured worker is receiving or is entitled to receive and the effect a [CRSSA] might have on those benefits; and

   (iv)   The marital or domestic partnership status of the injured worker.

RCW 51.04.063(2)(j)(i)-(iv). The statute does not specify whether this list is exclusive or whether the IAJ may consider other factors in the best-interest analysis. It explicitly provides, however, that "[t]here is no appeal from the [IAJ]'s decision." RCW 51.04.063(2)(k).

¶15 Whether or not the worker has legal representation, the parties must submit the CRSSA to the Board for its approval. RCW 51.04.063(2)(l), (4). The statute provides that the Board "shall" approve the CRSSA within 30 days unless it finds one of five enumerated defects:

   (a)    The parties have not entered into the agreement knowingly and willingly;

   (b)    The agreement does not meet the requirements of a [CRSSA];

   (c)    The agreement is the result of a material misrepresentation of law or fact;

   (d)    The agreement is the result of harassment or coercion; or

   (e)    The agreement is unreasonable as a matter of law.

RCW 51.04.063(3). Thus, the statute plainly limits the discretion of the Board to reject a CRSSA to these specific grounds.

¶16 The 2011 legislation also directed the Board to "adopt rules as necessary to implement" the law. Laws of 2011, 1st Spec. Sess., ch. 37, § 305. The Board accordingly promulgated a rule governing the contents of CRSSAs at WAC 263-12-052, requiring that all CRSSAs contain:

(6) The nature and extent of the injuries and disabilities of the worker and the conditions accepted and segregated in the claim;

(7) The life expectancy of the worker;

(8) Other benefits the worker is receiving or is entitled to receive and the effect that a claim resolution structured settlement agreement may have on those benefits;

(9) The marital or domestic partnership status of the worker.

These elements correspond to those specified in the statute for an IAJ's best-interest determination. RCW 51.04.063(2)(j)(i)-(iv).

¶17 In sum, these statutes purport to serve the interests of injured workers by authorizing them to exchange their continuing workers' compensation benefits for a structured settlement: a negotiated sum paid out in installments. As noted, the legislation contains a number of measures, applicable to all workers, designed as a curb against unwise decisions: only workers over a set age may choose a structured settlement, only claims of a certain age may be settled, medical benefits may not be waived, and any party may void a structured settlement within 30 days after Board approval. RCW 51.04.063.

¶18 The legislation, understandably, guards even more the interests of workers without legal representation. Workers may exchange their benefits for a structured settlement only if an IAJ finds that the CRSSA is in the best interest of the worker after considering explicit criteria designed to examine that interest. In contrast, the statute is wholly

void of any requirement that workers with legal counsel convince the state that a structured settlement is in their best interests. In fact, only before the IAJ does the statute require consideration of the worker's interests, and only workers without legal counsel go before the IAJ when proposing a CRSSA. Those with attorneys proceed directly to the Board, which judges proposed settlements under five express criteria, none of which require consideration of the worker's best interests. RCW 51.04.063(3)(a)-(e).

¶19 Whether we apply the canons of construction in determining whether a statute is ambiguous, *see Campbell & Gwinn*, 146 Wn.2d at 12, the rules articulated in that case and in *E.A.T.W.*, 168 Wn.2d at 343-44, allow us to determine a statute's meaning by considering all of its terms as they relate to its subject. In doing so, the differing treatment of different classes may throw the intended effect of the text into sharper relief. The statutory text before us extends certain safeguards to all workers, but only for those without counsel does it require the state to determine that the settlement is in their best interest. This approach assigns the determination of one's own interest to those arguably best positioned to make that determination, workers with legal counsel. Inversely, it removes the same determination from those arguably most in need of an independent review of their own interests, those without counsel. Whether we think it better policy for the state to determine the best interests of all CRSSA applicants is beside the point. The legislature has adopted a detailed, rational scheme in which the state decides whether a structured settlement is in the interests of workers without legal counsel. The inclusion in WAC 263-12-052(6)-(9), which applies to all CRSSA applicants, of criteria touching on the worker's interest cannot override the statute's limitation of that inquiry to workers without legal counsel. By asking us to approve that inquiry for all workers, the Board asks us to take a seat in the legislative chambers, an invitation we must decline.

¶20 The superior court was correct in reversing the Board's decision and remanding to the Board with instructions to make its decision without considering whether the CRSSA was in Zimmerman's best interest. Therefore, we affirm the decision of superior court.

JOHANSON, A.C.J., and MAXA, J., concur.