[No. 48550–0.   En Banc.   January 6, 1983.]

THE UNIVERSITY OF WASHINGTON, *Petitioner,* v. DAVID G. MANSON, *Respondent.*

*Kenneth O. Eikenberry, Attorney General,* and *Elsa Kircher Cole, Assistant,* for petitioner.

*Jack J. Ackerman,* for respondent.

PEARSON, J.—The University of Washington appeals the Court of Appeals affirmance of an order of the Higher Education Personnel Board (hereinafter HEPB) reinstating respondent David G. Manson as an employee of the University.

The issue before us concerns the decision of the University not to reinstate Manson, who was presumed to have resigned his position after 3 days' unauthorized absence, and who submitted to the HEPB a letter from his physician stating that his absence was involuntary. We are asked to decide whether the HEPB was correct in reversing the University's decision not to reinstate Manson. We agree with the Court of Appeals that the HEPB's order reinstating Manson was proper.

Respondent David Manson was a classified employee at the University of Washington. Beginning on August 7, 1978, and continuing throughout that week, Manson failed to report to work and failed to call his supervisor to explain his absence. Manson could not be contacted by his supervisor because he had no telephone.

Pursuant to WAC 251-10-180, Manson was presumed to have resigned based on his absence without authorized leave for more than 3 consecutive days. In accordance with this provision, notice was sent to Manson on August 9, 1978, informing him of his right to petition for reinstatement, "upon proof that the absence was involuntary or

unavoidable," within 7 calendar days after service of the notice. WAC 251–10–180.

Within the 7–day petitioning period, Manson wrote a letter to his appointing authority stating, in essence, that his absence was caused by asthma, that his difficulty in breathing disturbed his sleeping pattern and prevented him from realizing the importance of calling his supervisor by 8 a.m., and that such a call would have required a 1–block trip to a public telephone. The letter also stated that a doctor was consulted on August 14, 1978, and that further information would be supplied on request.

The appointing authority denied Manson's petition for reinstatement. In addition to Manson's letter, the appointing authority considered several interdepartmental memoranda which revealed: (1) repeated unauthorized absenteeism by Manson; (2) warnings to Manson by his supervisors that he was required to call by 8 a.m. to report his absences; (3) Manson's assurances that his choice not to have a telephone would not hinder his compliance with this policy; (4) reports from Manson's doctors that Manson could control his asthma by taking his prescribed medicine; and (5) an admission by Manson to a supervisor that he could prevent an asthma attack by taking his medication at the onset of recognizable symptoms.

Manson appealed to the HEPB and attached to his appeal a letter from his physician. The physician's statement, dated September 1, indicated that, although he did not see Manson until August 14, he believed the absence of the prior week to have been involuntary due to the severity of the asthma attack. This letter had not been sent to the appointing authority at the University of Washington.

Originally, Manson's appeal was heard by the director of the HEPB. *See* WAC 251–12–075. The director upheld the appointing authority's denial of Manson's petition for reinstatement. He found, *inter alia,* that Manson was aware that he would be considered on unauthorized absence status unless he called in, and that, although the physician indicated that Manson's absence was involuntary, there was

no evidence that the illness was so debilitating as to prohibit him from calling to inform his supervisor of the situation.

On review by the full board, this determination was reversed. The HEPB found no requirement under WAC 251-10-180 that employees contact their employer during the period of absence to be eligible for reinstatement, and further found that the physician's statement proved the absence was involuntary. The board concluded that the rejection of Manson's petition for reinstatement was improper and ordered that Manson be reinstated with all back pay and benefits.

Upon appeal, the King County Superior Court reversed the HEPB. The court adopted the HEPB's conclusion that Manson was not required to contact his employer during his absence to be eligible for reinstatement under WAC 251-10-180. Nonetheless, the court found that the physician's letter was at no time made available to the appointing authority, and therefore the denial of the petition by the appointing authority, based on the evidence presented, was neither arbitrary nor capricious.

The Court of Appeals, Division One, reversing the trial court, determined that: (1) under RCW 28B.16.120(1) and RCW 28B.16.130, the HEPB may consider evidence beyond that considered by the appointing authority, therefore consideration of the doctor's letter was proper; and (2) the HEPB's decision was not contrary to a preponderance of the evidence or arbitrary or capricious, therefore the trial court exceeded its scope of review when it reversed the board's order. The HEPB's order was reinstated by the Court of Appeals.

The issue presented by this case turns upon the interpretation of the statutes and the administrative rules promulgated thereunder governing personnel administration in state institutions of higher education.[1]

---

[1]No independent issue of due process is presented. The constitutional guaranty of due process does not apply to public employment except for procedures

The state Higher Education Personnel Board was created by RCW 28B.16.060. Among the HEPB's duties is the promulgation of rules and regulations "regarding the basis and procedures to be followed for: (1) The dismissal, suspension, or demotion of an employee, and appeals therefrom . . ." RCW 28B.16.100.

The statute (RCW 28B.16) includes specific requirements as to the content of rules promulgated by the HEPB:

a. The rules "shall provide for local administration and management by the institutions of higher education" of "(2) [d]ismissal, suspension, or demotion of an employee". RCW 28B.16.101.

b. The rules shall not authorize an institution of higher education to suspend an employee for more than 15 calendar days as a single penalty. RCW 28B.16.120(1).

c. The rules must require that an employee be given written notice of a suspension. RCW 28B.16.120(1).

RCW 28B.16 also specifies the employee's right to appeal to the HEPB. "Any employee who is reduced, dismissed, suspended, or demoted . . . shall have the right to appeal to the board not later than thirty days after the effective date of such action." RCW 28B.16.120(2).

The statute provides the parties to such an appeal with rights to an open hearing, to notice, to be represented by counsel, to call witnesses and give evidence, and to cross–examine witnesses. RCW 28B.16.130. Within 30 days of hearing of such an appeal, the HEPB must give written findings of fact, conclusions of law, and an order. RCW 28B.16.140. Either party may appeal from the HEPB's order to the superior court (RCW 28B.16.150) and from the superior court to the Court of Appeals and this court. RCW 28B.16.160.

HEPB rules promulgated pursuant to RCW 28B.16.100 provide for the disciplinary actions of demotion, suspension, reduction, and dismissal. The grounds for these disciplinary actions include neglect of duty, inefficiency,

established by statute. *Olson v. UW*, 89 Wn.2d 558, 564, 573 P.2d 1308 (1978).

incompetence, and willful violation of personnel rules and regulations. WAC 251–10–110. Employees must be given 15 days' notice of dismissal. WAC 251–10–120.

The rules also provide for appeals by employees from the institution's disciplinary action. Such an appeal must be made in writing within 30 days of such action. WAC 251–12–080. In any such appeal, the institution has the burden of proof. WAC 251–12–240(1). The detailed procedures for hearing such appeals are set out in WAC 251–12–085 through –250.

The rules provide for an additional procedure independent of these disciplinary actions. This is the "presumption of resignation." WAC 251–10–180. Under this provision, an employee may be presumed to have resigned after 3 consecutive days' unauthorized absence. Notice acknowledging the presumption of resignation is to be sent to the employee's last known address. The employee has 7 days from service of this notice to petition the appointing authority for reinstatement "upon proof that the absence was involuntary or unavoidable." If the employee is not reinstated after making such a timely petition, he shall be advised of his right to appeal to the HEPB under WAC 251–12–075. WAC 251–12–075 provides a general right of appeal for violations of any higher education personnel law or rule.

Under WAC 251–12–075, the HEPB has discretion to determine the most appropriate procedure for resolving such an appeal. It may select from three alternatives:

1. The HEPB may handle the appeal as if it were an appeal from a disciplinary action, under WAC 251–12–080 through –260.

2. The HEPB may refer the matter to its director to investigate and to issue a determination based on his investigation. Either party may within 30 days file written exceptions to the director's determination. These exceptions will be heard by the full HEPB, which may limit argument to the exceptions or rehear the case in its entirety. The burden of proof in such a hearing of exceptions to the director's determination is on the party chal-

lenging the determination. WAC 251-12-240.

3. Both parties may be requested to present evidence upon which the HEPB may take action without a hearing.

In the case before us, the HEPB determined that the second of these three procedures was the most appropriate. The matter was referred to the director of the HEPB, who determined that the University was correct in refusing to reinstate Manson. The full HEPB reversed the director's determination and entered the following conclusions and order:

### I.

The spirit of the HEPB Rules indicates that an employee has the responsibility to be at work during assigned working hours except during periods of absence approved by the supervisor.

. . .

### II.

The supervisor's requirement that appellant call at 8 a.m. any day he was unable to report to work is authorized, and indeed intended, by WAC 251-22-050 and -22-111. However, there is no requirement under the provisions of WAC 251-10-180 that employees must contact their employer during the period of absence to be eligible for reinstatement when dismissed under the rules governing presumption of resignation.

### III.

Appellant provided a statement from his physician that his absence was involuntary.

### IV.

Rejection of appellant's petition for reinstatement was an arbitrary act under the rule. Disciplinary action for failure to comply with agency rules and regulations is provided for in other rules adopted by the Board for that purpose.

### V.

The Director's recommended Order should be reversed.

ORDER

Appellant should be and is hereby reinstated with all back pay and benefits effective August 14, 1978.

The standard of review of the HEPB's decision is specified by RCW 28B.16.150 and WAC 251–12–270, which provide that an order of the HEPB may be appealed on the grounds that it was:

(a) Founded on or contained error of law, which shall specifically include error in construction or application of any pertinent rules or regulations;

(b) Contrary to a preponderance of the evidence as disclosed by the entire record with respect to any specified finding or findings of fact;

(c) Materially affected by unlawful procedure;

(d) Based on violation of any constitutional provision; or

(e) Arbitrary or capricious.

RCW 28B.16.150(1). We must determine, therefore, whether the HEPB's decision was flawed in any of these five ways.

The critical conclusion of the HEPB is 3: "Appellant provided a statement from his physician that his absence was involuntary." The Superior Court reversed the HEPB because the court concluded that the letter from the physician was not made available to the appointing authority (representing the University) in the petition for reinstatement. Implicit in the Superior Court's decision is the conclusion that the employee's right to present evidence that his absence was involuntary does not extend beyond the 7 days provided by WAC 251–10–180. Therefore, any evidence not presented in the petition for reinstatement should not have been considered by the HEPB.

The University argues that this conclusion is correct and that significant policy considerations support it. If the HEPB, in reviewing the University's decision not to reinstate, may consider information not made available to the University in the employee's petition for reinstatement, then the University is effectively precluded from relying on the presumption of resignation. Any decision of the University not to reinstate might be overturned by the HEPB because of information not made available to the University. Not being able to determine when such information

would invalidate its decision not to reinstate, the University could never hire replacement personnel until the HEPB decided the appeal. This would impose a substantial burden on University administration.

We disagree with the University, and hold that the HEPB was correct in determining that the physician's letter could be considered in reviewing the employee's petition. There are several reasons for this conclusion.

■ First, the wording of WAC 251–10–180 does not require that proof that the employee's absence was involuntary or unavoidable be included in the petition for reinstatement. The rule merely requires that the employee petition the University within 7 days, asking to be reinstated "upon proof" that his absence was involuntary or unavoidable. It does not require that the proof accompany the petition.

Second, the procedures under WAC 251–12–075 for reviewing the University's decision not to reinstate strongly suggest that the HEPB may consider information other than that included in the petition. Three procedures for review are provided in WAC 251–12–075. The first is the appeal procedure available in disciplinary actions. In this procedure, the employee may give evidence and present and cross-examine witnesses. WAC 251–12–100(2). The HEPB may subpoena witnesses (WAC 251–12–100(2)) or order discovery (WAC 251–12–230). Nothing in the rules limits the employee to information presented in his petition. The second procedure is investigation by the director, the procedure which was ordered in the case before the court. The third procedure is to request both parties to submit evidence on which the HEPB may act without a hearing. Under this procedure, the employee is specifically entitled to present evidence.

Although the second procedure, the one used in the present case, does not explicitly allow the employee to present additional information, there is a strong implication of that right. The employee is explicitly entitled to present evidence under the other two procedures. Moreover, under the first procedure, the appeal hearing, the burden of persuasion is on the University. WAC 251–12–240(1). Under the second procedure, however, the burden is on the employee. WAC 251–12–240(3). If the employee may present additional evidence when the University has the burden, a fortiori the employee should be entitled to present additional evidence when he has the burden.

The employee has no way of knowing at the time of submitting his petition which of the three procedures under WAC 251–12–075 the HEPB will in its discretion adopt. Moreover, 7 days may not be sufficient time in which to develop sufficient evidence to establish the requisite proof.

For these reasons, the employee should be entitled to present additional information to the HEPB. Therefore, the letter from Manson's physician was properly considered by the HEPB in reversing the University's decision not to reinstate.

This analysis is consistent with the apparent purposes of the presumption of resignation. The rule in WAC 251–10–180 allows the University to remove from the payroll an employee who leaves his employment without formally resigning. It avoids problems of giving notice and holding a hearing for an employee who cannot be contacted. Such rules have been upheld in other jurisdictions. *McQuaid v. State Accident Ins. Fund,* 36 Or. App. 83, 583 P.2d 572 (1978); *State ex rel. Waldman v. Burke,* 152 Ohio St. 213, 88 N.E.2d 578 (1949). The policy underlying the rule, however, does not operate if the employee who has been absent

responds to the acknowledgment of presumed resignation. An employee who petitions for reinstatement provides a strong prima facie case that he did not intend to resign. If the University wishes to dismiss or otherwise penalize the employee for his unauthorized absence, the most appropriate procedure is not presumed resignation but the disciplinary procedures authorized by RCW 28B.16.

█ The University, however, has attempted to transmogrify this rule of administrative convenience into a summary dismissal procedure which circumvents the employee's due process rights provided by RCW 28B.16. It appears from the director's findings that the real basis for the University's action was not Manson's being presumed to have resigned, but rather his history of irregular attendance at his job. In fact, Manson made clear by his timely petition for reinstatement that he had no intention of resigning his position. The proceedings constituted, therefore, in substance if not in form, dismissal for cause rather than acknowledgment of Manson's resignation. Under the University's construction of WAC 251–10–180, Manson had the burden of proving that he should be reinstated to his position, and had only 7 days in which to furnish the proof. This is a severe abridgement of the 30–day right of appeal provided by RCW 28B.16.120(2). Such administrative efforts to curtail the effect of a statute will not be upheld. Agency rules and regulations, or agency interpretation thereof, cannot amend legislative enactments. *State ex rel. Public Disclosure Comm'n v. Rains,* 87 Wn.2d 626, 555 P.2d 1368, 94 A.L.R.3d 933 (1976).

The HEPB correctly recognized that the University misconstrued WAC 251–10–180, and that the only question to be considered was whether Manson's absence was involuntary or unavoidable. The letter from Manson's physician, which was properly considered by the HEPB, clearly stated that Manson's absence was involuntary. The University submitted no information to the contrary. Therefore, the HEPB's order reinstating Manson was supported by a preponderance of the evidence and was neither erroneous in

law nor arbitrary or capricious. There is, therefore, no ground upon which to reverse that order.

The Court of Appeals is affirmed.

BRACHTENBACH, C.J., STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, and DIMMICK, JJ., and CUNNINGHAM, J. Pro Tem., concur.