192 P.3d 903 (2008)
144 Wash.App. 432
Bashiru KABBAE, Appellant,
v.
DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Respondent.
No. 59607-1-I.
Court of Appeals of Washington, Division 1.
May 5, 2008.
*904 John R Scannell, Attorney at Law, Seattle, WA, for Appellant.
Diane Lamon Dorsey, Attorney at Law, Seattle, WA, for Respondent.

PUBLISHED OPINION IN PART
SCHINDLER, C.J.
¶ 1 An agency rule that conflicts with the plain language and the legislative intent of a statute is invalid. Bashiru Kabbae challenges the Department of Social and Health Services (DSHS) finding that he neglected three vulnerable adults in violation of RCW 74.34.020 while working as a caregiver. Bashiru Kabbae contends that Washington Administrative Code (WAC) XXX-XX-XXXX(2)(e) of the DSHS Hearing Rules for Review Judges impermissibly conflicts with RCW 34.05.464(4) of the Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, which states that the "reviewing officer shall exercise all the decision-making power that the reviewing officer would have had to decide and enter the final order had the reviewing officer presided over the hearing.. . ." We agree with Kabbae's contention and conclude that WAC XXX-XX-XXXX(2)(e) conflicts with the express intent and language of RCW 34.05.464(4) by only allowing the review officer to add "essential" findings that are "consistent with the ALJ's findings." Because WAC XXX-XX-XXXX(2)(e) conflicts with RCW 34.05.464(4), that section of the DSHS Hearing Rules exceeds the agency's statutory authority and is invalid. But even under the correct standard of review, because substantial evidence supports the findings *905 that Kabbae neglected three vulnerable adults, we affirm.

FACTS
¶ 2 Alpha Spring Meadow Homes is a nonprofit agency that provides residential and support services to individuals with developmental disabilities. Alpha Spring Meadow Homes operates two homes in Shoreline, Alki House and San Juan House. From February 2003 until March 27, 2005, Bashiru Kabbae worked weekend night shifts from 10:00 p.m. on Saturday until 9:00 a.m. on Sunday, caring for the residents in Alki House. As the caregiver during the night shift, Kabbae duties included assisting and monitoring the residents, cleaning, and taking care of the residents' basic needs, such as administering medication and preparing breakfast.
¶ 3 The three residents that Kabbae cared for at Alki House, TJ, MR, and JG, require 24-hour care and supervision. TJ has been diagnosed with moderate mental retardation, significant hearing impairment, neurological disorders, and sometimes needs help identifying and responding to emergencies. MR has been diagnosed with Down Syndrome, profound mental retardation, intermittent explosive disorder, obsessive compulsive disorder, and anxiety disorder. MR also engages in self-injurious behavior and assaultive behavior toward others. JG has been diagnosed with moderate mental retardation, deafness, and epilepsy. JG has seizures one to two times every two weeks. On the days he does not work, JG has a routine of going to the store in the morning to buy rubber bands. JG becomes very upset if there is any deviation in his schedule. If it was necessary for Kabbae to go to the store with JG, Kabbae had to call the staff person next door at San Juan House to cover both houses while he was away.
¶ 4 While working the night shift at Alki House on March 26, 2005, Kabbae testified that his head hurt and he was dizzy. Kabbae admitted that at 11:50 p.m. he left the three residents at Alki House unsupervised and unattended, and drove to a nearby Safeway to purchase Advil. Although Kabbae also admitted that according to the emergency protocol, he had to call his supervisor, Scott MacWilliams, before he left, he did not do so. Kabbae said that he tried to call the staff person at San Juan House before he left, but the phone line was busy.
¶ 5 While Kabbae was gone, two Alpha Spring Meadow Homes' employees, Tess Forte and Nephtali Stackhouse, arrived at Alki House to deliver Easter baskets. When no one answered the door, Forte and Stackhouse entered the house and discovered no staff members were present. They called MacWilliams and waited for him to arrive. When Kabbae returned at 12:11 a.m., Forte told him he was fired.
¶ 6 A March 29 referral to the DSHS Adult Protective Services (APS) program alleged that Kabbae neglected TJ, MR, and JG. The investigator from APS determined that Kabbae neglected the three vulnerable adults in his care. APS notified Kabbae by letter of the findings that he neglected the three vulnerable adults and informed him that if the findings became final, state law could prevent him from being employed in a position or hold a license that involves the care of vulnerable adults or children. Kabbae requested an administrative hearing to challenge the findings of neglect.
¶ 7 After a two day fact-finding hearing, the Administrative Law Judge (ALJ) issued an Initial Order. The ALJ concluded that Kabbae's decision to leave the three vulnerable adults unattended and unsupervised constituted a clear and present danger to their health, safety, and welfare in violation of RCW 74.34.020(9).
¶ 8 Kabbae filed a petition for review of the Initial Order. Kabbae objected to a number of the findings and the conclusion that even under Kabbae's version of the facts, his actions constituted a clear and present danger to TJ, JG, and MR. Conclusion 5 of the Initial Order states:
A preponderance of the evidence establishes that Mr. Kabbae left three essentially helpless adults with no attendant supervision and without contacting or informing backup supervisory or support staff. Even if all of Appellant's version of the facts were accepted, which it is not, he still committed an act demonstrating a serious *906 disregard of consequences of such a magnitude as to constitute a clear and present danger to the health, welfare and safety of the three Alki residents. There is no plausible excuse for leaving the three alone, even for 20 minutes; Mr. Kabbae's health and safety was not that seriously endangered. The ALJ does not believe Mr. Kabbae was exposed to any chemical, but even assuming chemical exposure, if the treatment was merely burying some aspirin, it was not emergent. Mr. Kabbae's life was not at risk. Relief assistance was a simple phone call away. Further, it is no excuse that there may have been instances in which two of the three residents were left alone under the constructive supervisory or attendant care of the nearby San Juan attendant. There is no evidence that management knew or was aware of such an arrangement. But even if Mr. Kabbae believed that he could leave if a call was made to San Juan, he did not do it this time. There is a significant difference between calling a nearby attendant to inform him that you are leaving, and calling no one and leaving three extremely vulnerable adults unattended and with no responsible person knowing about the absence. Finally, Appellant is not credible when he states that he did not call in because he was intimidated or at least discouraged from calling the on-call supervisor, Scott MacWilliams. There was no intimidation. Appellant exercised extremely poor judgment. It was so poor that it was neglect. Mr. Kabbae neglected three vulnerable adults.
¶ 9 The DSHS Board of Appeals review judge clarified and affirmed the Initial Order and the findings of neglect. In setting forth the standard of review, the review judge noted that the DSHS hearing rules limited the authority of a review judge to modify the ALJ's findings:
In adult Protective Services cases, the undersigned's authority to modify an initial hearing decision has been limited by Department rule. The undersigned may modify an initial hearing decision only if irregularities occurred in the proceedings that affected the fairness of the hearing, if the findings of fact are unsupported by substantial evidence in the record, if there is a need for additional consistent findings of fact based upon substantial evidence in the record, if there is a need for clarification in order to implement the decision, or if there are errors of law in the conclusions of law.
¶ 10 Kabbae filed a petition for review of the DSHS Decision and Final Order to superior court. The superior court affirmed. Kabbae appeals.

ANALYSIS

RCW 34.05.464(4) and WAC XXX-XX-XXXX(2)
¶ 11 Kabbae asserts as a matter of law that WAC XXX-XX-XXXX(2)(e), the DSHS hearing rule that limits the review officer's authority to make findings, conflicts with the statutory provisions in the Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, that states the "reviewing officer shall exercise all the decision-making power that the reviewing officer would have had to decide and enter the final order had the reviewing officer presided over the hearing. . . ." RCW 34.05.464(4).
¶ 12 We review the validity of an agency's rule de novo. Local 2916, IAFF v. Public Empl. Relations Comm'n, 128 Wash.2d 375, 379, 907 P.2d 1204 (1995). The validity of a rule is governed by RCW 34.05.570. A rule is invalid if it conflicts with the intent and purpose of the legislation, exceeds the statutory authority of the agency, or is arbitrary and capricious. RCW 34.05.570(2)(c); Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus., 84 Wash.App. 401, 405, 929 P.2d 1120 (1996). Under RCW 34.05.570(2)(c), the court "shall declare the rule invalid" if it finds the rule exceeds the statutory authority of the agency.
¶ 13 Where the legislature specifically delegates the power to make regulations to an administrator, those regulations are presumed to be valid. St. Francis Extended Health Care v. Dep't of Soc. & Health Servs., 115 Wash.2d 690, 702, 801 P.2d 212 (1990). "The burden of overcoming this presumption rests on the challenger, and judicial review will be limited to a determination of *907 whether the regulation in question is reasonably consistent with the statute being implemented." St. Francis, 115 Wash.2d at 702, 801 P.2d 212. We give substantial weight to an agency's interpretation of the statute it administers. King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 553, 14 P.3d 133 (2000). But because administrative agencies are "creatures of the legislature without inherent or common-law powers," an agency only has those powers that are conferred either expressly or by necessary implication. Human Rights Comm'n ex rel. Spangenberg v. Cheney Sch. Dist. 30, 97 Wash.2d 118, 125, 641 P.2d 163 (1982) (quoting State v. Munson, 23 Wash.App. 522, 524, 597 P.2d 440) (1979). If an enabling statute does not authorize a particular regulation, either expressly or by necessary implication, that regulation must be declared invalid. In the Matter of the Consolidated Cases Concerning the Registration of Electric Lightwave, Inc., 123 Wash.2d 530, 536-40, 869 P.2d 1045 (1994)("we do not defer to an agency the power to determine the scope of its own authority").
¶ 14 Statutory interpretation is a question of law we review de novo. Western Telepage, Inc. v. City of Tacoma, 140 Wash.2d 599, 607, 998 P.2d 884 (2000). This court's primary goal in interpreting statutes is "to ascertain and give effect to legislative intent." State v. Pacific Health Center, Inc., 135 Wash.App. 149, 158-59, 143 P.3d 618 (2006). If the statute's meaning is plain on its face, we give effect to that plain meaning. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002). A statute is ambiguous if it has two or more reasonable interpretations, but not "merely because different interpretations are conceivable." Cerrillo v. Esparza, 158 Wash.2d 194, 201, 142 P.3d 155 (2006) (quoting, Agrilink Foods, Inc. v. Dep't of Revenue, 153 Wash.2d 392, 396, 103 P.3d 1226 (2005)). If a statute is ambiguous, we may resort to legislative history. Campbell & Gwinn, 146 Wash.2d at 12, 43 P.3d 4.
¶ 15 Under the WAPA, an ALJ conducts the fact finding hearing and issues an order. RCW 34.05.461(3) states that the Initial Order must include findings, conclusions, and the reasons for the order. The ALJ must also clearly state whether a finding is based on credibility or demeanor. RCW 34.05.461(3).
¶ 16 RCW 34.05.464 governs agency review and the procedures by which an agency conducts an internal review of an initial order. RCW 34.05.464(4) states the review officer has the authority to exercise the same decision making power as the ALJ unless limited by law or by the review officer with notice to all parties. RCW 34.05.461(4). RCW 34.05.464(4) also requires the review officer to give "due regard" to the opportunity of the ALJ to observe witnesses. RCW 34.05.464(4) provides in pertinent part:
The reviewing officer shall exercise all the decision-making power that the reviewing officer would have had to decide and enter the final order had the reviewing officer presided over the hearing, except to the extent that the issues subject to review are limited by a provision of law or by the reviewing officer upon notice to all parties. In reviewing findings of fact by presiding officers, the reviewing officer shall give due regard to the presiding officer's opportunity to observe witnesses.
¶ 17 In Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 405, 858 P.2d 494 (1993), the court held that RCW 34.05.464(4) authorizes the agency to substitute its own findings of fact for those made by the ALJ. Tapper, 122 Wash.2d at 404-06, 858 P.2d 494. The court looked to federal cases interpreting a virtually identical provision, and concluded that under the statutory language, administrative review is different from appellate review. Tapper, at 405, 858 P.2d 494. The court held that in enacting RCW 34.05.464(4), the legislature made the judgment that "the final authority for agency decision-making should rest with the agency head rather than with his or her subordinates, and that such final authority includes `all the decision-making power' of the hearing officer." Tapper, at 405, 858 P.2d 494.
¶ 18 The DSHS Hearing Rules for Review Judges give the review judge the same decision making authority as the ALJ in cases that concern licensing, rate-making, and parent address disclosure. WAC XXX-XX-XXXX(1).[1] *908 But in all other cases, the authority of the review judge to change the ALJ's decision is limited. WAC XXX-XX-XXXX(2) provides:
(2) In all other cases, a review judge may only change the hearing decision if:
(a) There are irregularities, including misconduct of a party or misconduct of the ALJ or abuse of discretion by the ALJ, that affected the fairness of the hearing;
(b) The findings of fact are not supported by substantial evidence based on the entire record.
(c) The decision includes errors of law;
(d) The decision needs to be clarified before the parties can implement it; or
(e) Findings of fact must be added because the ALJ failed to make an essential factual finding. The additional findings must be supported by substantial evidence in view of the entire record and must be consistent with the ALJ's findings that are supported by substantial evidence based on the entire record.
¶ 19 While WAC XXX-XX-XXXX(2) sections (a) through (d) do not conflict with RCW 34.05.464(4), we conclude WAC XXX-XX-XXXX(2)(e) conflicts with the statute. The plain and unambiguous language of RCW 34.05.464(4) states that the review judge "shall exercise all the decision-making power" the ALJ has to decide, and enter the initial order. Unless a contrary legislative intent is clear, the use of the word "shall" in a statute is a mandatory directive, Erection Co. v. Dep't of Labor & Indus., 121 Wash.2d 513, 518, 852 P.2d 288 (1993). Because the ALJ has the authority to enter findings of fact, the review judge "has the power to make his or her own findings of fact and in the process set aside or modify the findings of the ALJ." Tapper, 122 Wash.2d at 404, 858 P.2d 494. But instead of following the statutory mandate that allows the review officer to substitute his own findings of fact for those of the ALJ, WAC XXX-XX-XXXX(2)(e) only authorizes the review judge to add findings if they are "essential" and "consistent with the ALJ's findings." Because WAC XXX-XX-XXXX(2)(e) impermissibly conflicts with RCW 34.05.464(4), we conclude that WAC XXX-XX-XXXX(2)(e) is invalid.
¶ 20 DSHS asserts that because the legislature gave it the authority to promulgate rules, WAC XXX-XX-XXXX(2) is a valid use of that authority. The legislature in RCW 74.08.090 gives DSHS the authority to promulgate administrative rules to carry out the spirit and purpose of the Abuse of Vulnerable Adults Act (AVA), chapter 74.34 RCW. The legislature also provides that DSHS "shall have the power to compel compliance with the rules and regulations established by it." RCW 74.08.090. The stated purpose of the AVA is to protect vulnerable adults from abuse, financial exploitation, and neglect. Although DSHS has the power to promulgate rules under the AVA, the DSHS Hearing Rule that limits the decision making authority of the review judge is not related to the spirit and purpose of the AVA.
¶ 21 DSHS also argues that because the review judge has the authority under the WAPA to limit the issues subject to review, the agency has the discretion to limit review. We disagree. It is well settled that administrative rules cannot amend or change legislative enactments. University of Washington v. Manson, 98 Wash.2d 552, 562, 656 P.2d 1050 (1983). Although the language in RCW 34.05.464(4) allows the review officer to limit issues, it does not authorize an agency to limit the authority of the review officer to make his or her own findings through rulemaking.
¶ 22 In addition, DSHS claims that because the DSHS hearing rules predate the WAPA, the legislature intended the rules to remain in place under the new statutory scheme. DSHS enacted WAC 388-08-413 in *909 1979 to provide standards for review of a final administrative decision. Former WAC 388-08-413(3) states that the ALJ's initial findings of fact, conclusions of law, and decision shall not be modified unless there was an irregularity in the proceedings, the findings were unsupported by substantial evidence, there was an error of law, or there was a need for clarification. In 2000, DSHS adopted WAC XXX-XX-XXXX to replace former WAC 388-08-413. Washington State Register XX-XX-XXX (2000). RCW 34.05.464(4) clearly gives the review officer more authority than former WAC 388-08-413. RCW 34.05.001, also expressly states that it intends the rules to remain in effect unless the statute clearly requires otherwise. RCW 34.05.001 provides in pertinent part:
The legislature intends that to the greatest extent possible and unless this chapter clearly requires otherwise, current agency practices and court decisions interpreting the [WAPA] in effect before July 1, 1989, shall remain in effect.
Because WAC XXX-XX-XXXX(e) clearly conflicts with RCW 34.05.464(4) DSHS' argument fails.
¶ 23 DSHS also claims that the conclusion that WAC XXX-XX-XXXX(2)(e) conflicts with RCW 34.05.464(4) is inconsistent with our recent decision in Costanich v. Dep't of Soc. & Health Servs., 138 Wash.App. 547, 560, 156 P.3d 232 (2007). But the issue in Costanich was the level of deference the review judge must give to the ALJ's credibility findings. The parties in Costanich did not challenge the DSHS hearing rules and we did not address whether WAC XXX-XX-XXXX(2)(e) conflicts with RCW 34.05.464(4). Costanich, 138 Wash.App. at 554, 156 P.3d 232. Because RCW 34.05.464(4) requires the review judge to give "due regard" to the ALJ's opportunity to observe witnesses, we held that the review judge acted outside the scope of his authority when the review judge based his additional, contradictory findings solely on hearsay evidence the ALJ rejected as lacking credibility. Costanich, 138 Wash. App. at 559, 156 P.3d 232. The decision in Costanich that the review judge did not give due regard to the ALJ's findings is consistent with RCW 34.05.464(4), and with our conclusion that WAC XXX-XX-XXXX(2)(e) is invalid.[2]
¶ 24 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.
WE CONCUR: LAU and AGID, JJ.
NOTES
[1] A review judge may only review the cases listed in WAC XXX-XX-XXXX(4).

(1) A review judge has the same decision-making authority as an ALJ in the following cases, but must consider the ALJ's opportunity to observe the witnesses:
(a) Licensing, certification and related civil fines;
(b) Rate-making proceedings; and
(c) Parent address disclosure.
[2] Our conclusion that WAC XXX-XX-XXXX(2)(e) is invalid would not affect the outcome in Costanich.