[No. 37897-3-II.   Division Two.   September 15, 2009.]

WASHINGTON FEDERATION OF STATE EMPLOYEES, *Respondent*, v. THE DEPARTMENT OF GENERAL ADMINISTRATION, *Appellant*.

*Robert M. McKenna, Attorney General,* and *Spencer W. Daniels* and *Mitchel R. Sachs, Assistants,* for appellant.

*Edward E. Younglove III* (of *Younglove Lyman & Coker, PLLC*), for respondent.

¶1 VAN DEREN, C.J. — The Department of General Administration (GA) appeals the trial court's invalidation of three Washington administrative rules the GA promulgated under the authority granted to it by RCW 41.06.142[1] to ensure fair bidding procedures by state agencies seeking

---

[1] The full text of RCW 41.06.142 states:

(1) Any department, agency, or institution of higher education may purchase services, including services that have been customarily and historically provided by employees in the classified service under this chapter, by contracting with individuals, nonprofit organizations, businesses, employee business units, or other entities if the following criteria are met:

(a) The invitation for bid or request for proposal contains measurable standards for the performance of the contract;

(b) Employees in the classified service whose positions or work would be displaced by the contract are provided an opportunity to offer alternatives to purchasing services by contract and, if these alternatives are not accepted, compete for the contract under competitive contracting procedures in subsection (4) of this section;

(c) The contract with an entity other than an employee business unit includes a provision requiring the entity to consider employment of state employees who may be displaced by the contract;

(d) The department, agency, or institution of higher education has established a contract monitoring process to measure contract performance, costs, service delivery quality, and other contract standards, and to cancel contracts that do not meet those standards; and

(e) The department, agency, or institution of higher education has determined that the contract results in savings or efficiency improvements. The contracting agency must consider the consequences and potential mitigation of improper or failed performance by the contractor.

(2) Any provision contrary to or in conflict with this section in any collective bargaining agreement in effect on July 1, 2005, is not effective beyond the expiration date of the agreement.

(3) Contracting for services that is expressly mandated by the legislature or was authorized by law prior to July 1, 2005, including contracts and agreements between public entities, shall not be subject to the processes set forth in subsections (1), (4), and (5) of this section.

(4) Competitive contracting shall be implemented as follows:

(a) At least ninety days prior to the date the contracting agency requests bids from private entities for a contract for services provided by classified employees, the contracting agency shall notify the classified employees whose positions or work would be displaced by the contract. The employees shall have sixty days from the date of notification to offer alternatives to purchasing

private contracts for services traditionally done by state civil service employees. The trial court invalidated all three rules because it concluded that the rules exceeded the GA's rule-making authority. We affirm the trial court's rulings invalidating WAC 236-51-006 and WAC 236-51-010(11) as exceeding the GA's statutory rule-making authority and

---

services by contract, and the agency shall consider the alternatives before requesting bids.

(b) If the employees decide to compete for the contract, they shall notify the contracting agency of their decision. Employees must form one or more employee business units for the purpose of submitting a bid or bids to perform the services.

(c) The director of personnel, with the advice and assistance of the department of general administration, shall develop and make available to employee business units training in the bidding process and general bid preparation.

(d) The director of general administration, with the advice and assistance of the department of personnel, shall, by rule, establish procedures to ensure that bids are submitted and evaluated in a fair and objective manner and that there exists a competitive market for the service. Such rules shall include, but not be limited to: (i) Prohibitions against participation in the bid evaluation process by employees who prepared the business unit's bid or who perform any of the services to be contracted; (ii) provisions to ensure no bidder receives an advantage over other bidders and that bid requirements are applied equitably to all parties; and (iii) procedures that require the contracting agency to receive complaints regarding the bidding process and to consider them before awarding the contract. Appeal of an agency's actions under this subsection is an adjudicative proceeding and subject to the applicable provisions of chapter 34.05 RCW, the administrative procedure act, with the final decision to be rendered by an administrative law judge assigned under chapter 34.12 RCW.

(e) An employee business unit's bid must include the fully allocated costs of the service, including the cost of the employees' salaries and benefits, space, equipment, materials, and other costs necessary to perform the function. An employee business unit's cost shall not include the state's indirect overhead costs unless those costs can be attributed directly to the function in question and would not exist if that function were not performed in state service.

(f) A department, agency, or institution of higher education may contract with the department of general administration to conduct the bidding process.

(5) As used in this section:

(a) "Employee business unit" means a group of employees who perform services to be contracted under this section and who submit a bid for the performance of those services under subsection (4) of this section.

(b) "Indirect overhead costs" means the pro rata share of existing agency administrative salaries and benefits, and rent, equipment costs, utilities, and materials associated with those administrative functions.

(c) "Competitive contracting" means the process by which classified employees of a department, agency, or institution of higher education compete with businesses, individuals, nonprofit organizations, or other entities for contracts authorized by subsection (1) of this section.

(6) The requirements of this section do not apply to RCW 74.13.031(5).

affirm, on different grounds, the trial court's invalidation of WAC 236-51-225.

## FACTS

¶2 The Washington Federation of State Employees (Federation) challenged three rules adopted by the GA under former RCW 41.06.142 (2002),[2] which delegates to the GA the power to establish rules "to ensure that [contract] bids are submitted and evaluated in a fair and objective manner." RCW 41.06.142(4)(d).

¶3 Two related rules, WAC 236-51-006[3] and -010(11),[4] the displaced employee rules, address the definition of "displaced employees," and the third, WAC 236-51-225,[5] forbids an employee business unit (EBU) performing an existing agency contract from bidding on additional contracts unless it has agency permission to do so.

¶4 We must decide whether the legislature granted the GA rule-making authority under RCW 41.06.142(4)(d) to promulgate these rules. If so, we review whether the rules are consistent with the statute and are not arbitrary and capricious.

---

[2] In 2008 the legislature amended RCW 41.06.142. LAWS OF 2008, ch. 267, § 9. The subsequent amendments to former RCW 41.06.142 are immaterial to the cited sections, so we cite to the existing statute.

[3] WAC 236-51-006 provides:

If state employees will not be displaced, agencies shall comply with RCW 41.06.142 (1)(a), (d) and (e), and applicable laws and rules governing the purchase of such services.

[4] WAC 236-51-010(11) provides:

"Displaced employee" means a classified employee whose position or work would be eliminated, resulting in the employee being laid off or assigned to a different job classification, as a result of an award via the competitive contracting process.

[5] WAC 236-51-225 provides:

An employee business unit awarded a contract by an agency shall not perform or bid on solicitations for services not contained in its contract unless their agency approves in writing.

¶5 The parties agree on the background of this appeal. Until 2002, the state's civil service law, which was originally enacted in 1960, imposed restrictions on employees and employers that did not allow employees to engage in full-scale collective bargaining. Former ch. 41.06 RCW (1960), *amended by* LAWS OF 2002, ch. 354, §§ 201-23, 232-33, 239, 241-43, *amended by* LAWS OF 2008, ch. 267, § 9; *see generally Ortblad v. State*, 88 Wn.2d 380, 383, 561 P.2d 201 (1977). Furthermore, former RCW 41.06.380 (1979) prohibited state employers from contracting with third parties to perform services customarily performed by civil service employees. Former RCW 41.06.380 (1979), *repealed by* LAWS OF 2002, ch. 354, § 403.

¶6 In 2002, the legislature adopted the personnel service reform act of 2002 (PSRA). LAWS OF 2002, ch. 354, § 201. Portions of the PSRA are codified in chapter 41.06 RCW and chapter 41.80 RCW. Both parties agree that the PSRA has three principal components, or three "legs." Br. of Resp't at 3.

¶7 First, the law grants collective bargaining rights over wages to state employees. Ch. 41.80 RCW. Second, the PSRA allows state agencies to contract with third parties for work formerly done by state employees. RCW 41.06.142. Third, amending certain provisions of chapter 41.06 RCW, the law revised certain civil service classifications for unrepresented employees. The third party contracting provisions are the subject of this appeal. RCW 41.06.142.

¶8 The PSRA permits state agencies to contract with private parties to perform work traditionally done by state civil service employees. RCW 41.06.142. The statute provides a framework for the contracting process. Employees "whose positions or work would be displaced by [a] contract are provided an opportunity to offer alternatives to purchasing services by contract" to the agency. RCW 41.06.142(1)(b).

¶9 If the agency nevertheless decides to proceed with private party contracting, the affected employees may form an EBU and compete for the contract on the same footing as

private entities. RCW 41.06.142(4)(b), (c)-(e). If an agency awards a contract to a private party instead of an EBU, the contract must contain a provision "requiring the entity to consider employment of state employees who may be displaced by the contract." RCW 41.06.142(1)(c). Although the statute defines certain terms, such as EBU, it does not define "whose positions or work would be displaced." RCW 41.06.142(1)(b), (5)(a).

¶10 RCW 41.06.142(4)(d) also delegates certain rule-making authority to the GA. Specifically, "The director of general administration, with the advice and assistance of the department of personnel, shall, by rule, establish procedures to ensure that bids are submitted and evaluated in a fair and objective manner and that there exists a competitive market for the service." RCW 41.06.142(4)(d).

¶11 The GA promulgated a large number of rules affecting the operation of RCW 41.06.142. GA adopted these rules in 2004 and they became effective July 1, 2005. They include such things as prohibitions on bid evaluations by employees forming an EBU and establishing a manner for agencies to deal with complaints about the bid process. RCW 41.06.142(4)(d)(i), (ii), (iii). In early 2006, the Federation challenged WAC 236-51-225, which forbids EBUs performing an agency contract from bidding on additional contracts unless the EBU has written agency permission—known as the EBU bid rule—and the two related displaced employee rules, WAC 236-51-006 and -010(11).

¶12 The Federation unsuccessfully petitioned the GA director to amend or repeal these rules. The Federation then sought the governor's review under RCW 34.05.330(3). The governor rejected the challenge. In April 2007, the Federation filed a petition for judicial review of administrative rules and for declaratory judgment in Thurston County Superior Court. RCW 34.05.542, .570(2)(b).

¶13 The Federation raised three challenges to the rules: (1) that they exceeded the GA's rule-making authority, (2) that they were contrary to law, and (3) that they were arbitrary and capricious. The GA certified the record of the

rule-making process. The trial court concluded that the rules exceeded the GA's rule-making authority and did not reach the remaining issues.

¶14 The GA appeals.

## ANALYSIS

I. STANDARDS OF REVIEW

¶15 We will declare an agency rule invalid if it "(1) violates constitutional provisions, (2) exceeds statutory authority of the agency, (3) was adopted without compliance to statutory rule-making procedures, or (4) is arbitrary and capricious." *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003). The Federation argues that the rules are not within the GA's statutory rule-making authority, that the rules are inconsistent with the contracting statute, and that they are arbitrary and capricious.

¶16 The extent of GA's rule-making authority is a question of law. *Wash. Public Ports*, 148 Wn.2d at 645.

> "Certain well settled principles govern the scope of an administrative agency's rule-making authority. First, an agency has only those powers either expressly granted or necessarily implied from statutory grants of authority. Second, an agency does not have the power to promulgate rules that amend or change legislative enactments. Third, rules may 'fill in the gaps' in legislation if such rules are 'necessary to the effectuation of a general statutory scheme.' *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157 (1975)."

*ASARCO, Inc. v. Puget Sound Air Pollution Control Agency*, 51 Wn. App. 49, 53, 751 P.2d 1229 (1988) (internal quotation marks omitted) (quoting *Green River Cmty. Coll. v. Higher Educ. Pers. Bd.*, 95 Wn.2d 108, 112, 622 P.2d 826 (1980), *modified on reh'g*, 95 Wn.2d 962, 633 P.2d 1234 (1981)), *aff'd*, 112 Wn.2d 314, 323, 771 P.2d 335 (1989). "[A]lthough we generally accord substantial deference to agency decisions, we do not defer to an agency the power to determine

the scope of its own authority." *In re Registration of Elec. Lightwave, Inc.*, 123 Wn.2d 530, 540, 869 P.2d 1045 (1994).

¶17 When an agency acts within its authority, a rule is presumed to be valid and, therefore, the "burden of demonstrating the invalidity of agency action is on the party asserting the invalidity." RCW 34.05.570(1)(a). The party asserting the invalidity must show compelling reasons why the rule conflicts with the intent and purpose of the legislation. *Weyerhaeuser Co. v. Dep't of Ecology*, 86 Wn.2d 310, 317, 545 P.2d 5 (1976). Any rule that is "reasonably consistent" with the underlying statute should be upheld. *Green River Cmty. Coll.*, 95 Wn.2d at 112.

¶18 In addition,

> [a] rule is arbitrary and capricious "if it is willful and unreasoning and taken without regard to the attending facts or circumstances." *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 148 Wn.2d 887, 905, 64 P.3d 606 (2003). If "there is room for two opinions, an action taken after due consideration is not arbitrary and capricious." *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 383, 932 P.2d 139 (1997).

*D.W. Close Co. v. Dep't of Labor & Indus.*, 143 Wn. App. 118, 130, 177 P.3d 143 (2008).

¶19 Finally, we may affirm on any ground supported by the record. *Nast v. Michels*, 107 Wn.2d 300, 308, 730 P.2d 54 (1986).

## II. GA's Rule-Making Authority

¶20 RCW 41.06.142(4)(d) directs the GA to enact rules to "establish procedures to ensure that bids are submitted and evaluated in a fair and objective manner and that there exists a competitive market for the service." And the statute's subsections, RCW 41.06.142(4)(d)(i), (ii), and (iii), set out three types of rules for the GA to adopt with respect to fairness in the bidding process and complaints about the bidding process. But RCW 41.06.142(4)(d) expressly states that GA's rule-making authority is not limited to these identified rules.

¶21 The Federation argues that the GA lacked the authority to promulgate the three challenged rules because they do not focus on the bidding procedures to ensure fair and objective evaluation of bids or a determination of a competitive market for such bids. RCW 41.06.142(4)(d). GA maintains that " '[o]nce the legislature has properly delegated rule-making authority to a state agency, that power is liberally construed.' " Br. of Appellant at 21 (quoting *Spry v. Miller*, 25 Wn. App 741, 745, 610 P.2d 931 (1980)).

¶22 But the weight of more recent authority supports the Federation's position that rule-making authority has limits:

> Agencies may exercise only those powers conferred on them expressly or by necessary implication. If an enabling statute does not authorize a particular regulation, either expressly or by necessary implication, "that regulation must be declared invalid despite its practical necessity or appropriateness." *Wash. Indep. Tel. Ass'n v. Telecomm. Ratepayers Ass'n for Cost-Based & Equitable Rates*, 75 Wn. App. 356, 363, 880 P.2d 50 (1994). To hold otherwise would be to "defer to an agency the power to determine the scope of its own authority." [*Elec. Lightwave*, 123 Wn.2d at 540.]

*In re Impoundment of Chevrolet Truck*, 148 Wn.2d 145, 156-57, 60 P.3d 53 (2002) (footnote and citation omitted); *see also Pierce County v. State*, 144 Wn. App. 783, 841, 185 P.3d 594 (2008); *Kabbae v. Dep't of Soc. & Health Servs.*, 144 Wn. App. 432, 440, 192 P.3d 903 (2008).

A. WAC 236-51-006 and WAC 236-51-010(11): The Displaced Employee Rules

¶23 We first examine the displaced employee rules, WAC 236-51-006 and -101(11). GA contends that the trial court construed "the grant of rule-making authority to [the GA] too narrowly." Br. of Appellant at 20. Specifically, GA asserts:

> Setting forth when the employees' opportunities and the agencies' corresponding obligations under RCW 41.06.142(1)(b)

and (c) are triggered is an integral part of the bid submittal and evaluation procedures for which [the GA] was directed by the legislature to adopt rules. Indeed, consistent with this rule-making authority, the rules establish a fair and objective manner for submitting and evaluating bids. This is accomplished by identifying who is a displaced employee for purposes of submitting a bid. This is the threshold determination that agencies must make and continues to be a critical determination throughout the contracting process.

Br. of Appellant at 21.

¶24 The Federation maintains that the legislature did not intend for the GA to address displaced employees.

Section 4(d) of RCW 41.06.142 deals with the competitive contract process *after* the employer has proposed having work contracted out and has presumably already complied with the requirements in RCW 41.06.142(1), which includes permitting employees whose work or positions would be displaced to first offer alternatives for the employer's consideration.

Br. of Resp't at 15-16.

Had the Legislature intended that [the] GA have such broad rule-making authority, it could have used broad general terms, as in RCW 43.19.011[(2)](d), supra.[6] Had that been the Legislature's intent, it would not have included GA's rule-making authority as a subsection in the section of the statute dealing only with the bidding process, and it would not have added the language limiting the scope of the rules to that process. The statutory grant is a narrow one expressly restricted in scope by the statute's own language.

Br. of Resp't at 17. Thus, the issue is whether defining the term "displaced" in RCW 41.06.142(1)(b) is a "procedure[ ] to ensure that bids are submitted and evaluated in a fair and objective manner" under RCW 41.06.142(4)(d).

¶25 GA argues that there are situations when it would be helpful for the agency to have the rules define "displaced

---

[6] GA has broad authority to draft rules and "perform all other functions necessary and proper to carry out the purposes" of chapter 43.19 RCW. RCW 43.19.011(2)(d). But RCW 41.06.142 is not part of chapter 43.19 RCW and contains its own delegation of rule-making authority.

employees" so agencies could make key "threshold" determinations for the bidding process. Br. of Appellant at 21. GA submits as examples: (1) identification of nondisplaced employees who can assist the agency with award methodology and bid evaluation; (2) identification of employees who must be notified of the agency's intent to solicit bids; (3) identification of employees who may offer alternatives to assist agencies in developing alternatives; (4) identification of employees who are eligible to form an EBU; (5) identification of potential bidders, including an EBU, who are allowed to submit complaints about the bid process and appeal determinations to administrative law judges; and (6) identification of displaced employees to allow a private entity awarded the contract to consider hiring the employees, as required by statute.

¶26 Although these circumstances illustrate that the challenged rules would provide overall practical assistance to GA and agencies that seek private-party contracts, the reasons do not rise to the rule-making level the statute authorized, either "expressly or by necessary implication." *Impoundment of Chevrolet Truck*, 148 Wn.2d at 156-57. The language and the structure of RCW 41.06.142 support this conclusion.

¶27 The legislature directed GA to, by rule, "establish procedures to ensure that bids are submitted and evaluated in a fair and objective manner." RCW 41.06.142(4)(d). GA's reasons for the challenged rules, however, address the necessary procedures to be undertaken by agencies before bid submission or bid evaluation.

¶28 All of the GA's reasons, save one, are based on an agency's need to identify employees potentially affected by a possible future determination by an agency to enter into a third party contract.[7] These prebid agency activities balance agency needs with the civil service employees' interest in retaining their positions or work by allowing

---

[7] The last reason—identification of displaced employees who may be hired by a contracting party—speaks to a necessary provision in a contract already awarded and has nothing to do with bid submission or evaluation. RCW 41.06.142(1)(c).

employees to persuade an agency, e.g., not to contract. RCW 41.06.142(1)(b). Prebid activities include agency identification of employees "whose positions or work would be displaced" by a contract so that they may "offer alternatives to purchasing services by contract" and, if the agency does not adopt alternatives to purchasing services by contract, then agency identification of employees "whose positions or work would be displaced" by a contract to allow them to consider forming an EBU to compete for the contract. RCW 41.06.142(1)(b). Both of these activities, by statute, take place entirely within an agency before the agency may request bid submission from private parties or EBUs. Specifically, the contracting agency is required to notify displaced workers at least 90 days before requesting bids and employees are given 60 days to offer alternatives. RCW 41.06.142(4)(a).

¶29 Moreover, agency concerns about EBU bid submission and evaluation are purely hypothetical at the prebid stage when an agency must identify certain displaced employees. Only if the agency rejects employee alternatives and if the affected employees decide to form an EBU would concerns about an EBU's employee's participation in bid submission and evaluation be triggered. *See* RCW 41.06-.142(1)(b), (4)(b). Further, agency/EBU employees may not be involved in bid submission and evaluation if the agency determines to "contract with the [GA] to conduct the bidding process." RCW 41.06.142(4)(f).

¶30 The placement of the rule-making language in RCW 41.06.142(4)(d) further supports a conclusion that the legislature did not grant GA authority to establish rules defining "displaced employees." RCW 41.06.142(1)(b) describes alternatives for displaced employees in prebid activities. The timeline for employee submission and agency consideration of alternatives is in RCW 41.06.142(4)(a), the provision directing employees who decide to compete for the contract to form an EBU is in RCW 41.06.142(4)(b), and the legislative grant of rule-making authority regarding the bid process does not appear until section RCW 41.06.142(4)(d).

¶31 The rule-making authority the legislature granted to GA is limited to rules affecting bid submission and evaluation. Because WAC 236-51-006 and -010(11) define "displaced employees" and address internal agency prebid activities, they are not within the specific scope of the GA's rule-making authority for the actual bid process. Although the adopted regulations may be appropriate to assist in carrying out the statute's objectives, they are not authorized either "expressly or by necessary implication" as "procedures to ensure that bids are submitted and evaluated in a fair and objective manner." *Impoundment of Chevrolet Truck*, 148 Wn.2d at 156-57; RCW 41.06.142(4)(d). Consequently, we affirm the trial court's ruling invalidating WAC 236-51-006 and -010(11) as beyond GA's rule-making authority.

## B. WAC 236-51-225: The EBU Bid Rule

¶32 The trial court also determined that WAC 236-51-225, prohibiting EBUs that are performing an agency contract from bidding on additional contracts without agency permission to do so, was invalid because it exceeded the GA's rule-making authority.

¶33 The GA argues that RCW 41.06.142(4)(d) directs the GA to establish rules governing bid submission and because WAC 236-51-225 is "essential to determining who is eligible to submit bids," this rule falls within its rule-making authority. Br. of Appellant at 31. The Federation acknowledges that, although this rule "is closer to the bidding process," it actually "is not a rule concerning a bidding process, but rather the substantive right of employees to compete for work." Br. of Resp't at 32.

¶34 GA argues that it must set out procedures to ensure that bids are submitted in a "fair and objective manner" and that this includes "provisions to ensure no bidder receives an advantage over other bidders." RCW 41.06.142(4)(d)(ii). It contends,

If an [EBU] that has been successful in winning a contract and is engaged in performing that contract is now representing that

it has the time and resources to perform another contract, that raises a question as to how this can be so and whether the [EBU]'s bid on the new contract accurately reflects the [EBU's] true costs and, accordingly, whether the [EBU] would be competing fairly with other bidders.

Reply Br. of Appellant at 19-20; *see* RCW 41.06.142(4)(e). This explanation links the EBU bid rule to the express statutory language granting the GA its rule-making authority to control the bid process. *Impoundment of Chevrolet Truck*, 148 Wn.2d at 156-57. Consequently, we disagree with the trial court's determination that WAC 236-51-225 is invalid and outside the scope of the GA's rule-making authority but we can affirm the trial court's conclusion on a different ground. *Nast*, 107 Wn.2d at 308.

¶35 Because the trial court invalidated WAC 236-51-225 as outside the scope of GA's rule-making authority, it did not address the two other asserted bases for invalidating the rule—the challenged rule conflicts with the statutory language and is arbitrary and capricious. Because we determine that the legislature granted the GA rule-making authority to address EBU bids, we hold that WAC 236-51--225 is arbitrary and capricious and improperly delegates power to employing agencies and, therefore, affirm the trial court's invalidation of the rule on different grounds.

### 1. Delegation

¶36 The Federation argues that requiring that EBUs seek agency approval before submitting additional bids "would give an agency unfettered discretion to destroy an EBU," particularly in cases in which an EBU seeks to bid on a renewal contract for work it is already performing. Br. of Resp't at 33. It adds that this lack of standards in WAC 236-51-225 improperly delegates GA decision-making authority to employing agencies.

¶37 The GA has two responses. First, "While the rule does not expressly state a standard for the agency to make its approval decision, that standard is inherent in the purpose of the rule." Reply Br. of Appellant at 20. Second, it

notes that the Federation is presenting a facial challenge to the rule and we should wait until an agency has actually denied an EBU's request to examine this issue in an "as applied" context. Reply Br. of Appellant at 21.

¶38 The general rule on delegation is

"[a]part from statute, whether administrative officers in whom certain powers are vested or upon whom certain duties are imposed may deputize others to exercise such powers or perform such duties usually depends upon whether the particular act or duty sought to be delegated is ministerial, on the one hand, or on the other, discretionary or quasi-judicial."

*In re Application of Puget Sound Pilots Ass'n*, 63 Wn.2d 142, 145-46, 385 P.2d 711 (1963) (quoting 42 AM. JUR. *Public Administrative Law* § 73 (1942)).

¶39 Administrative and ministerial tasks are those such as "gathering, collating and presenting" facts to the agency charged with a statutory duty. *Pierce v. Lake Stevens Sch. Dist. No. 4*, 84 Wn.2d 772, 783, 529 P.2d 810 (1974). In contrast, discretionary tasks often involve the "authority of exercising the discretion and power of decision." *Ledgering v. State*, 63 Wn.2d 94, 100, 385 P.2d 522 (1963) (stating that director of licenses could not delegate power to suspend a license).

¶40 WAC 236-51-225 gives to the employing agencies the unfettered right to exclude already-formed EBUs from bidding on a new contract. This represents an improper delegation of discretion by the GA to other agencies. *Application of Puget Sound Pilots Ass'n*, 63 Wn.2d at 145-46. Even assuming the GA has the power to decide the fate of existing EBUs, nothing in the statute indicates that this "power of decision" may be delegated, particularly absent any guidelines from the GA to employing agencies.

### 2. Arbitrary and Capricious

¶41 Even were the EBU bid rule a legal delegation of discretionary authority to employing agencies, it nevertheless is arbitrary and capricious.

[W]here the Legislature has specifically delegated rule-making authority to an agency, the agency's regulations are presumed valid, and only compelling reasons demonstrating that the regulation conflicts with the intent and purpose of the legislation[8] warrant striking down a challenged regulation. Thus, the regulation will be upheld if reasonably consistent with the statute being implemented. The wisdom or desirability of the rule is not a question for the court's review, although the court's purpose is to ascertain and give effect to the Legislature's intent.

*Armstrong v. State*, 91 Wn. App. 530, 536-37, 958 P.2d 1010 (1998) (citations omitted).

¶42 GA seeks to support WAC 236-51-225 primarily because EBU employees continue to be civil service employees and their employment status is taken into account under the rule. " '[EBU] members continue to be classified employees.' " Reply Br. of Appellant at 18-19 (quoting WAC 357-43-020). It maintains that employing agencies have the right to evaluate whether the EBU currently performing contract work has the ability to "perform the existing contract properly before the [EBU] diverts resources to another contract." Reply Br. of Appellant at 20. At oral argument, the GA discussed the example of an EBU formed to perform janitorial work at the Department of Transportation (DOT) that then seeks to bid on a new contract to perform janitorial work for the Department of Fisheries (Fisheries). According to the GA, the DOT should have the right to veto the EBU's additional bid to perform work for Fisheries in the event the DOT determines that the EBU would not be able to perform work under the new Fisheries

---

[8] Statutory interpretation is a question of law we review de novo. This court's primary goal in interpreting statutes is "to ascertain and give effect to the Legislature's intent." *Armstrong v. State*, 91 Wn. App. 530, 537, 958 P.2d 1010 (1998). If the statute's meaning is plain on its face, we give effect to that plain meaning. A statute is ambiguous if it has two or more reasonable interpretations, but not " 'merely because different interpretations are conceivable.' " *Kabbae*, 144 Wn. App. at 440 (internal quotation marks omitted) (quoting *Cerrillo v. Esparza*, 158 Wn.2d. 194, 201, 142 P.3d 155 (2006)). "If a statute is ambiguous, we may resort to legislative history." *Kabbae*, 144 Wn. App. at 440.

contract without hampering the work presently done for the DOT.

¶43 We find nothing in the framework of RCW 41.06.142 to support GA's argument. Under the statute, employees, whether in an already-functioning EBU or simply current agency employees, have the right to bid on contracts only if their current contract work for the EBU is going to be displaced by a new contract on which they wish to bid. RCW 41.06.142(1)(b), (4)(b). Using the GA's example, but within the statutory framework, EBU janitors in the DOT could submit a bid for cleaning work in Fisheries only if a portion of their work would be displaced by the second, Fisheries, contract.[9]

¶44 Consequently, because under RCW 41.06.142 employees in an EBU would have to lose some work through displacement before bidding on a second contract, the GA's concern—that the existing EBU would not have the resources to support a second contract—is unsupported by the text of the statute itself. An agency action is arbitrary and capricious if "taken without regard to the attending facts or circumstances." *Wash. Indep. Tel. Ass'n,* 148 Wn.2d at 905. To be eligible to bid, the EBU would have to first demonstrate that some of its members' work is being displaced, necessarily freeing up manpower and other resources for a new contract, negating the GA's stated reason for the EBU bid rule, WAC 236-51-225. We hold, therefore, that the EBU bid rule is invalid because it is arbitrary and capricious.

¶45 We affirm the trial court's ruling invalidating WAC 236-51-006 and -010(11), defining "displaced employees," and affirm, on different grounds, the trial court's invalidation of WAC 236-51-225 requiring EBUs to obtain agency permission to bid on contracts.

BRIDGEWATER and PENOYAR, JJ., concur.

---

[9] We note that at oral argument, the parties agreed that, since no EBU had ever been formed and an actual bid process had never occurred, it is difficult to anticipate what would occur in implementing any of the rules.